UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES

           - against -

                                      **MEMORANDUM & ORDER**

MERCEDES FALCON,                         21-CR-0577 (PKC)

                   Defendant.
------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Mercedes Falcon ("Defendant") is charged with one count of theft of funds, in violation of 18 U.S.C. § 666(a)(1)(A), and one count of healthcare fraud, in violation of 18 U.S.C. § 1347. (Indictment, Dkt. 53.)  The charges stem from Defendant's conduct while working as an Early Intervention Program instructor "teaching Applied Behavior Analysis to babies and toddlers with autism."  (Def.'s Mem. of L. to Suppress Evidence ("Def. Mot."), Dkt. 108 at 4.)  The government alleges that "between approximately January 2016 and December 2018, the defendant submitted fraudulent session notes and invoices and received payment for at least 6,000 non-existent Early Intervention Program sessions, resulting in the improper disbursement of more than $600,000, including more than $275,000 in Medicaid funds and more than $325,000 in [New York City Department of Health and Mental Hygiene ("NYC DOHMH")] funds, as well as lost time and resources for the victim children and their parents."   (Gov't Mem. of L. Opp. Pre-Trial Mots. ("Resp. in Opp."), Dkt. 109 at 5.)

Before the Court is Defendant's motion to suppress (1) historical cell site data obtained pursuant to a search warrant issued on October 16, 2019 (the "Cell Site Warrant"), (2) electronic records obtained from a search of Defendant's cellphone pursuant to a warrant issued on October 27, 2021 (the "First Phone Warrant"), and (3) electronic records obtained from a second search of Defendant's cellphone pursuant to a warrant issued on June 8, 2022 (the "Second Phone Warrant").

(Def. Mot., Dkt. 108.)  Additionally, Defendant seeks a bill of particulars due to the immense amount of geolocation data obtained over the course of the three-year investigation.  (*Id.*)  As explained further below, the Court denies on the merits Defendant's motion to suppress the data obtained from the Cell Site Warrant and First Phone Warrant, and denies as moot Defendant's motion to suppress the data obtained from the Second Phone Warrant and for a Bill of Particulars.

## I.    Factual Background

The Court details the relevant factual background below.  As explained in more detail in Section II.B., *infra*, the parties' disputes surrounding the Second Phone Warrant and the Bill of Particulars are now moot.  The background set forth below, therefore, focuses on the facts relevant to the remaining warrants at issue—that is, the Cell Site Warrant and the First Phone Warrant.

### A.    Defendant's Involvement in the New York State Early Intervention Program

The New York State Early Intervention Program (the "EIP") is a New York State program intended to assist developmentally delayed children with therapy services, special instruction, and social work services.  (Cell Site Warrant Appl., Dkt. 117-1 at ECF[1] 3.)  The program is primarily funded by New York State, but "some of the cost is covered by city and federal funding, as well as, occasionally, private insurers."  (*Id.*)  Individual therapists provide these services, and they "are either subcontractors or employees of agencies that hold EIP contracts with the [NYC DOHMH]."  (*Id.*)  Each therapy session provided to children as part of the program is generally between a half-hour to an hour in length.  (*Id.* at ECF 4.)  Therapists are paid after submitting written reports documenting therapy sessions, which include the date, time, and place of each appointment as well as some details related to the therapy provided and the child's progress.  (*Id.*)  These reports are

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

signed by both the parent or guardian of the child receiving services and the EIP therapist immediately after the EIP therapy session ends.  (*Id.*)

### B.    The Investigation into EIP Fraud and Defendant's Arrest

In 2017, the New York City Department of Investigation ("NYC DOI") began investigating allegations concerning therapists billing for EIP appointments that never occurred.  (*Id.*)  On October 4, 2018, the Federal Bureau of Investigation ("FBI") arrested eight EIP therapists as a result of the NYC DOI investigation.  (*Id.* at ECF 3–4.)  In June 2019, NYC DOI began a subsequent investigation into suspicious billing patterns of additional EIP therapists.  (*Id.* at ECF 4–5.)  The three search warrants relevant here were each obtained as a part of this second investigation.  They were issued on October 16, 2019, October 27, 2021, and June 8, 2022, respectively, and were each based on a sworn affidavit of FBI Special Agent Angel Agesta ("Agent Agesta").  (Def. Mot., Dkt. 108 at 6; Resp. in Opp., Dkt. 109 at 6, 9, 11; Cell Site Warrant Appl., Dkt. 117-1; First Phone Warrant Appl., Dkt. 117-2; Second Phone Warrant Appl., Dkt. 117-3.)

Defendant Falcon was arrested on October 26, 2021, in connection with the second investigation.  (*See* Def. Mot., Dkt. 108 at 5.)

### C.    The Cell Site Warrant

The government first sought historical cell site data from Defendant's cell phone provider pursuant to the Cell Site Warrant based on the affidavit of Agent Agesta, which alleged a violation of 18 U.S.C. § 666(a)(1)(A).  (Cell Site Warrant Appl., Dkt. 117-1.)  Specifically, Agent Agesta's affidavit explained:

> [Defendant] is an EIP therapist who has claimed to provide sessions in Brooklyn, Queens, and Staten Island, New York.  [Defendant] has listed her cell phone number . . . on employment records obtained by the DOI, including her Form I-9.  According to records obtained from AT&T, [Defendant] is also the listed subscriber for this telephone number.  This number is the call number associated with one of the SUBJECT TELEPHONES listed in Attachment A.1.  The DOHMH performed

a preliminary analysis of [Defendant]' s billing records for the period January 1, 2016[,] to December 31, 2018. In that period, [Defendant] billed for at least 592 sessions that purportedly ended after 9:00 p.m. (sometimes as late as 3:00 a.m.) and at least 403 sessions beginning before 7:00 a.m. (sometimes as early as 4:00 a.m.). During that period, [Defendant] claimed to have worked 92% of all possible days. In 2018, [Defendant] also claimed to conduct 51 or more hours of sessions in 45 out of 52 weeks (87%), with seven weeks in which she billed for 81 hours or more of sessions for the week. [Defendant] also claimed to perform more than 12 hours of sessions per day for 93 days in 2018. For example, on March 22, 2018, [Defendant] claimed to work from 6:00 a.m. to 11:00 p.m. (a 17-hour day). During this time, [Defendant] claimed to service nine different children. For eight out of ten of the travel times between sessions, [Defendant] claimed to have made the trip and set up for the new session in 15 minutes or less. On the following day, [Defendant] claimed to have resumed sessions at 6:00 a.m. and to have performed 12.5 hours of sessions.

DOHMH called the parents of three children previously served by [Defendant]. One parent stated that sessions were never provided after 7:00 p.m. and that her child was asleep by 9:00 p.m. Yet [Defendant] billed for sessions with this child starting after 7:00 p.m., claiming that some sessions ended as late as 10:42 p.m. Another parent stated that [Defendant] had typically arrived at 5:30 pm. or 6:00 p.m. and that there were only one or two occasion[s] where [Defendant] had finished sessions at 8:00 p.m. or later. In contrast, a majority of sessions billed by [Defendant] for this child purportedly began after 8:00 p.m. Another mother called 311 to complain about [Defendant], stating that [Defendant] had asked the mother to sign session notes for sessions that had not occurred.

The DOHMH's follow-up analysis showed that [Defendant]'s billing patterns changed dramatically after the October 2018 Arrests. Comparing the eight months before the arrests to the eight months after the arrests: [Defendant]'s percentage of days with sessions after 9:00 p.m. dropped from 54% to 30%; [Defendant]'s percentage of days worked dropped from 96% to 77%; [Defendant]'s average hours worked per day dropped from 9.9 to 7.6; [Defendant]'s average hours worked per week dropped from 66.5 to 40.7; [Defendant]'s percentage of days with ten or more sessions per day dropped from 62% to approximately 32%; and [Defendant]'s percentage of weeks with 51 hours or more sessions per week dropped from 91% to 39%. In addition, [Defendant]'s percentage of days with early morning sessions dropped from 84% the month before the arrests to 38% the month after the arrest[s]. By February, March[,] and April 2019, it had dropped to 0%. Based on these analyses, I submit that there is probable cause to believe that [Defendant] was engaged in fraudulent billing from at least January 1, 2016[,] to at least October 2018.

(*Id.* at ECF 9–12 (cleaned up).) The Cell Site Warrant sought data for the time period of January 1, 2016, to October 31, 2018, including, but not limited to subscriber information, records and

other information relating to wire and electronic communications (without the content of such communications), and historical geo-location information. (*Id.* at ECF 37–38.) According to the Application, the information was sought because it could be used to identify users of the associated devices and "whether the [Defendant was] using [her] phone[] when [she was] purportedly providing EIP sessions." (*Id.* at ECF 31.)

The Honorable Steven L. Tiscione, Magistrate Judge, issued the Cell Site Warrant on October 16, 2019. (Resp. in Opp., Dkt. 109 at 6; Cell Site Warrant Appl., Dkt. 117-1 at ECF 32.)

### D.    First Phone Warrant

In the First Phone Warrant, the government sought to search Defendant's cellphone, which had been seized upon her arrest that day, for information related to alleged violations of 18 U.S.C. §§ 666(a)(1)(A), 1347 between January 1, 2015, and June 30, 2019. (First Phone Warrant Appl., Dkt. 117-2; Resp. in Opp., Dkt. 109 at 9.) Specifically, Attachment B to the First Phone Warrant Application describes the categorical information sought by the government:

> 1. All records on the SUBJECT DEVICES described in Attachment A that relate to commission of violations of Title 18, United States Code, Sections 666(a)(l)(A) and 1347 and involve [Defendant] from the period January 1, 2015 [to] June 30, 2019, including:
>
> > a. names and telephone numbers, as well as the contents of all call logs, contact lists, text messages (including iMessages and messages contained in messaging applications), emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, social media posts and/or messages, Internet activity (including browser history, web page logs and search terms entered by the user), geo-location data, application data, calendar entries and other electronic media;
> >
> > b. evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as, for example, logs, phonebooks, saved usernames and passwords, documents, and browsing history;
> >
> > c. evidence of software that would allow others to control the Device, such as viruses, Trojan horses, and other forms of malicious software, as well as

evidence of the presence or absence of security software designed to detect malicious software;

d. evidence of the times the Devices were used;

e. passwords, encryption keys, and other access devices that may be necessary to access the Devices; and

f. contextual information necessary to understand the evidence described in this Attachment, all of which constitute evidence of violations of Title 18, United States Code, Sections 666(a)(l)(A) and 1347.

(First Phone Warrant Appl., Dkt. 117-2 at ECF 19–20.)

Agent Agesta's affidavit in support of the First Phone Warrant Application set forth the same factual allegations as the Cell Site Warrant Application with respect to Defendant, and additionally alleged:

During the course of this investigation, law enforcement officers determined that [Defendant], an EIP therapist, had submitted numerous fraudulent session notes and invoices for non-existent EIP sessions purportedly occurring in the Eastern District of New York and elsewhere. Specifically, law enforcement officers determined that, between approximately January 2016 and December 2018, [Defendant] submitted fraudulent session notes and invoices and received payment for at least 6,384 non-existent EIP sessions, resulting in the improper disbursement of more than $636,345, including more than $291,225 in Medicaid funds and more than $176,011 in NYC DOHMH funds. . . .

Law enforcement agents obtained historical location data for [Defendant]'s cellular telephone, which was identified as [Defendant]'s cellular telephone based on, among other things, EIP employment records. Law enforcement officers compared the historical location data associated with [Defendant]'s telephone to location information contained in the EIP session notes submitted by [Defendant]. Based on this review, agents determined that on more than 6,100 occasions, [Defendant] was not present in the vicinity of the EIP therapy session location at the time that the session purportedly occurred.

Law enforcement officers reviewed telephone toll records for [Defendant]'s cellular telephone, which they identified as [Defendant]'s cellular telephone based on, among other things, EIP employment records, and determined that on at least 473 occasions [Defendant] was using her cellular telephone during at least a quarter of the time period that she claimed to be performing a one-hour EIP therapy session.

(*Id.* at ECF 34–37 (cleaned up).)

Agent Agesta's First Phone Warrant affidavit also stated that there was "probable cause to believe that" Defendant's cell phone would "contain evidence of [her] fraud" because it would "contain location data showing that [she was] not present for EIP sessions [she] claimed to perform." (*Id.* at ECF 7.) Additionally, the affidavit stated that "because EIP therapists must monitor, interact with, and take notes about the child throughout the entire session," they "cannot treat a child while using a telephone," and so Defendant's cell phone would "contain evidence of the Defendant['s] activities during [her appointments], including call records, text messages and browsing history." (*Id.* at ECF 8.) Lastly, the First Phone Warrant Application alleged that "caretakers informed law enforcement that they were frequently in contact with [EIP therapists] via cellular telephone, either by phone calls or by text messages." (First Phone Warrant Appl., Dkt. 117-2 at ECF 8.)

The Honorable Cheryl L. Pollak, Magistrate Judge, issued the First Phone Warrant on October 26, 2021. (*Id.* at ECF 16.)

## II.    Procedural History

A grand jury indicted Defendant on November 15, 2021, with one count of theft of funds under 18 U.S.C. § 666(a)(1)(A) and one count of healthcare fraud under 18 U.S.C. § 1347. (Indictment, Dkt. 53.)

### A.    Procedural Background of the Instant Motion

On August 5, 2024, Defendant filed the pending motion for a bill of particulars and to suppress evidence obtained pursuant to the warrants at issue here. (Def. Mot., Dkt. 108.) The government filed a motion in opposition on September 3, 2024. (Resp. in Opp., Dkt. 109.) Defendant filed a reply on September 24, 2024. (Def. Reply Supp. Mot. to Suppress ("Def. Reply"), Dkt. 114). The government filed a sur-reply on October 1, 2024. (Gov't Sur-Reply, Dkt.

116.)  After being granted permission, Defendant filed additional materials and a "sur-response"

to the government's sur-reply between October 9 and October 23, 2024.  (Dkts. 117–119.)  The

Court held oral argument on Defendant's motion on October 28, 2024.  (10/28/2024 Min. Entry.)

At the argument, the Court ordered the parties to further break down some of the statistical data

alleged in the Cell Site Warrant Application.  (*Id.*)  Additionally, the Court asked the parties to

confer on reaching a compromise to resolve Defendant's motion for a bill of particulars.  (*Id.*)

Pursuant to those directives, defense counsel filed a supplemental letter on November 11, 2024,

(Def. Supp. Ltr., Dkt. 120), and the government filed a response on November 25, 2024, (Gov't

Supp. Ltr., Dkt. 124).

### B.    Partial Mooting of the Instant Motion

Per the government's November 25, 2024, letter, Defendant's motion is now partially

moot.  (Dkt. 124.)  First, the government reports that the parties have conferred in good faith about

the bill of particulars motion and have reached an initial agreement.  (*Id.* at 2–3.)  Second, the

government represents that it will not introduce evidence of the Second Phone Warrant at trial:

> Namely—while the government intends to introduce at trial evidence seized
> pursuant to the First Phone Warrant (i.e., evidence of violations of Title 18, United
> States Code, Sections 666(a)(1)(A) (theft concerning programs receiving federal
> funds) and 1347 (health care fraud) for the period of January 1, 2015, through June
> 30, 2019 ("the Subject Offenses"))—the government does not intend to introduce
> evidence from the defendant's cell phone that was seized pursuant to the expanded
> time period of July 1, 2019, through October 26, 2021[,] or pursuant to the
> additional offenses under investigation in the Second Phone Warrant.

(*Id.* at 3.)

Based on these representations, the Court finds that the portions of Defendant's motion

seeking a Bill of Particulars and to suppress evidence from the Second Phone Warrant are moot,

and the Court need not resolve them.  *See United States v. Brown*, 627 F. Supp. 3d 206, 233

(E.D.N.Y. 2022) (finding suppression motion moot where the government agreed not to introduce

a post-arrest statement in its case-in-chief and collecting cases); *United States v. Hyman*, No. 18-CR-0307 (BMC) (LB), 2019 WL 5696840, at *2 (E.D.N.Y. Nov. 4, 2019) (denying motion to suppress statements where the government indicated it did not intend to offer the statements in its case-in-chief); *United States v. Rivera*, No. 16-CR-175 (LGS), 2017 WL 1843302, at *1 (S.D.N.Y. May 8, 2017) (denying motions to suppress as moot where the "[g]overnment represents that it does not intend to offer such evidence at trial."); *Gobern v. United States*, No. 18-CV-12411 (VSB), 2021 WL 3774293, at *1, *3 (S.D.N.Y. Aug. 25, 2021) (explaining that "the notion that the [g]overnment's decision not to offer challenged evidence warrants the denial of a suppression motion as moot" is "correct" and collecting cases); *United States v. Mathieu*, No. 16-CR-763 (LGS), 2018 WL 5869642, at *1 (S.D.N.Y. Nov. 9, 2018) ("Defendant's motion to suppress is moot as to [the email account] because the [g]overnment does not intend to use information produced from this account at trial."); *United States v. Nejad*, 436 F. Supp. 3d 707, 736 (S.D.N.Y. 2020) ("As an initial matter, Sadr's motion to suppress evidence from subsequent searches is moot with respect to all but the 2,978 pages of the 417 documents that the [g]overnment represents it will rely on at trial."); *United States v. Ahmed*, 94 F. Supp. 3d 394, 437 (E.D.N.Y. 2015) (denying suppression motion as moot where the government indicated it would not introduce the disputed evidence at trial); *United States v. Burke*, No. 09-CR-0135 (SJ), 2009 WL 4263635, at *4 (E.D.N.Y. Nov. 24, 2009) (same).

## DISCUSSION

### I.    *Franks* Hearing

#### A.    Legal Standard

To overcome the presumption of validity bestowed upon a judicially authorized warrant supported by probable cause, and the good-faith exception, a defendant must make a "substantial

preliminary showing" that "a false statement [included in the warrant application was made] knowingly and intentionally, or with reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 155 (1978).  "[I]f the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 156.  If the defendant establishes by a preponderance of the evidence at that hearing—known as a *Franks* hearing—that the affiant committed perjury or had a reckless disregard for the truth, the court is to set aside the false material and determine whether the affidavit's "remaining content is insufficient to establish probable cause." *Id.*  If so, then the "search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*  Courts within the Second Circuit generally assess whether a *Franks* hearing is required by a two-pronged framework in which "evidence may be suppressed if the defendant shows that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause . . . finding." *United States v. Gasperini*, No. 16-CR-0441 (NGG), 2017 WL 3038227, at *5 (E.D.N.Y. July 17, 2017) (citations omitted) (cleaned up), *aff'd*, 894 F.3d 482 (2d Cir. 2018).

**B.     Application**

Defendant contends that the Cell Site Warrant Application was "misleading at best and downright erroneous at worst," and contained material misstatements.  (Def. Reply, Dkt. 114 at 4.)[2]  Specifically, Defendant alleges that Agent Agesta's affidavit in support of the Cell Site Warrant misstated the contents of the 311 call made on October 31, 2018.  (*Id.* at 3–5.)  Paragraph

---

[2] Defendant's Reply was filed on the docket three times, at docket numbers 113, 114, and 118.  The three replies are identical.  This Court cites the reply filed at docket 114.

36 of the Cell Site Warrant Application states that a "mother called 311 to complain about [Defendant], stating that [Defendant] had asked the mother to sign session notes for sessions that had not occurred." (Cell Site Warrant Appl., Dkt. 117-1 at ECF 11.)  However, Defendant argues that "the notes recently provided by the government show that the parent was actually describing other peoples' misdoings, over six pages and [only] briefly mentions" Defendant's alleged fraud. (Def. Reply, Dkt. 114 at 4; *see also* Investigator Notes, Dkt. 114-2 at 4–5.)  Thus, Defendant implies that it was not proper for the Magistrate Judge who issued the Cell Site Warrant to consider the allegations related to the October 31, 2018, 311 call as a part of the Application, and that "the content remaining after the removal of the 311 call is insufficient to establish probable cause." (Def. Reply, Dkt. 114 at 4 (citing *Franks*, 438 U.S. at 154).)

In response, the government argues that Defendant is not legally entitled to a *Franks* hearing because she failed to show that the alleged inaccuracy in the warrant was either deliberately false or necessary to a finding of probable cause.  (Gov't Sur-Reply, Dkt. 116 at 2.) Further, the government argues that Defendant's motion sets forth a "conclusory allegation" and that there is "no argument that any of the alleged inaccuracies [were] made with the intention to mislead or with reckless disregard for the truth."  (*Id.*)  In support of that contention, the government produced[3] a third set of "notes,"[4] stating that these notes "squarely implicate the

---

[3] The Government referred to this document as "Exhibit 1" to its Sur-Reply, but did not file the document with the Sur-Reply.  Thus, the Court cites the document as filed at docket number 119-1 at ECF 18–24.

[4] The "notes" are the government's Exhibit 1. (Gov't Sur-Reply, Dkt. 116 at 2.)  However, the Court would not characterize the contents of relevant document as "notes," as there is no indication that they were recorded contemporaneously with the call.  Rather, the "third set of notes," (Gov't Sur-Reply, Dkt. 116 at 2), appears to be a referral from NYC DOHMH to NYC DOI, (*see* Dkt. 119-1 at ECF 18–24), hence the Court's reference to the document as the 2019 Referral.

defendant in misconduct and provide direct support for the assertion in paragraph 36." (*Id.*)  Based on that document, the government argues that there is no "material misstatement," (*id.* at 3), because the following evidence is included in the document provided to the Court:

> On October 12, 2019, the mother of Child [] called NYC LINK 311 and opened case #811390 with a complaint about the early intervention service providers assigned to her child. NYC BEI interviewed the parent. The mother reported that Falcon was part of a group of four therapists who presented themselves as a team of special instructors who would be splitting the hours between them. The mother said that she was upset because all four therapists assigned to the case quit at once, after she questioned three of them who all told her that "other parents signed for hours when the therapist was not there because they were so good." The mother stated that Falcon gave her session notes to sign for more than three sessions on her second visit and when the mother questioned this, Falcon told her that "parents sign for her, even when she is not there" and that this happened as team members began dropping her child's case.
>
> The mother reported that Falcon came twice, on August 17 and 19, 2018, around noon and 7:00PM for a total of three hours, saying that she was clear about the dates and times. Falcon['s] claims show two one-hour sessions: August 14, 2018, from 9:50 to 10:50PM and on August 17, 2018, from 9:10PM to 10:10PM. Call notes are attached.

(2019 Referral, Dkt. 119-1 at ECF 21.)

The government is correct.  "As the Court reads *Franks*, the defendant must first make a substantial preliminary showing that the government recklessly or knowingly made a misleading statement or omission. If he or she does so, the Court must then determine whether the misstatement or omission was necessary to the issuing court's finding." *United States v. Rajaratnam*, No. 09-CR-1184 (RJH), 2010 WL 3219333, at *1 & n.1 (S.D.N.Y. Aug. 12, 2010) (acknowledging that the Second Circuit also applies the "substantial preliminary showing" phrase to the second prong in *Franks*).  First, based on the 2019 Referral, Defendant fails to show that the statement in Agent Agesta's affidavit about a mother reporting that Defendant asked the mother to sign for hours in advance was misleading.  The 2019 Referral was clear that a mother:

called NYC Link 311 and opened case #811390 with a complaint about the early intervention service providers . . . stat[ing] that Falcon gave her session notes to sign for more than three sessions on her second visit and when the mother questioned this, Falcon told her that 'parents sign for her, even when she is not there' and that this happened as team members began dropping her child's case.

(2019 Referral, Dkt. 119-1 at ECF 21 (cleaned up).)

Second, Defendant does not allege sufficient evidence of deliberate misconduct, *Gasperini*, 2017 WL 3038227, at *5, or even a "reckless disregard of the truth," *Franks*, 438 U.S. at 155, by Agent Agesta. The contemporaneous notes summarizing the 311 call are ambiguous, at most, and are clarified by the 2019 Referral, which the Court finds demonstrates that Agent Agesta's affidavit on this issue was not misleading. Furthermore, there is no basis for the Court to find that it was unreasonable or reckless for Agent Agesta to rely on the 2019 Referral or the investigative notes of NYC DOHMH in preparing her affidavit.[5] Therefore, Defendant has not shown that the statement about the 311 call in Agent Agesta's affidavit for the Cell Site Warrant Application was misleading or false, or constituted deliberate misconduct or a reckless disregard for the truth.

Because Defendant has failed to meet her burden of making a substantial preliminary showing, she is not entitled to a *Franks* hearing regarding Agent Agesta's affidavit or the Cell Site Warrant Application.

## II.   Request to Suppress Data Obtained Pursuant to the Cell Site Warrant

In seeking suppression of the data obtained via the Cell Site Warrant, Defendant argues, in essence, lack of probable cause and overbreadth. (Def. Mot., Dkt. 108 at 15 ("The government,

---

[5] The 2019 Referral is titled "New York City Department of Health and Mental Hygiene Bureau of Early Intervention Referral to the New York City Department of Investigation Mercedes Falcon." (2019 Referral, Dkt. 119-1 at ECF 18.) At oral argument on the motion for suppression conducted on October 28, 2024, the government confirmed that the 2019 Referral was authored by NYC DOHMH, not NYC DOI. (Oral Argument Transcript ("Tr."), Dkt. 121 at 31:8.) Defense counsel confused the author of the report, which was acknowledged at oral argument. (Tr., Dkt. 121 at 39:13–14; Def. Sur-Sur Reply, Dkt. 119 at 4.)

when it applied for its search warrant for three years of Ms. Falcon's location data, failed to demonstrate that a crime had even occurred, much less one that would warrant such a vast intrusion into Ms. Falcon's personal life.").) The Court is not persuaded.

### A.    Probable Cause

1.    <u>Legal Standard</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "As this language indicates, the ultimate measure of the constitutionality of a government search or seizure is reasonableness." *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016) (quoting *United States v. Bailey*, 743 F.3d 322, 331 (2d Cir. 2014). "Reasonableness is 'generally determined by balancing the particular need to search or seize against the privacy interests invaded by such action.'" *Id.* (quoting same).

"[T]he Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). Because cell site data "provides an intimate window into a person's life, revealing not only his [or her] particular movements, but through them his [or her] 'familial, political, professional, religious, and sexual associations,'" *Carpenter v. United States*, 585 U.S. 296, 311 (2018) (quoting *United States v. Jones*, 565 U.S. 400, 415 (2012)), acquiring a person's cell site data constitutes a "search" and requires a warrant supported by probable cause, *id.* at 316. Searches conducted pursuant to a warrant supported by probable cause are presumed reasonable. *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017); *see also United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021) (finding that searches and seizures conducted without a warrant are presumptively unreasonable, "subject only to a few specifically established and well-delineated exceptions." (quoting *Katz*, 389 U.S. at 357)).

However, in certain circumstances, that presumption may be overcome, *United States v. Leon*, 468 U.S. 897, 922 (1984); for example, where probable cause in retrospect never existed, *id.* at 903. The bar for finding inadequacy of a judicially reviewed warrant application is high, as "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). In fact, the magistrate judge's "determination of probable cause should be paid great deference by reviewing courts." *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

"The law is well established that probable cause to search a location for . . . CSLI [cell site location information] is demonstrated where a totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found' thereby." *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (quoting *Gates*, 462 U.S. at 238). This standard does not require certainty, but requires more than just a "hunch." *Id.* Probable cause must be rooted in a "'fair probability' on which 'reasonable and prudent [people], not legal technicians, act.'" *Id.* (quoting *Gates*, 462 U.S. at 231, 238, 241). However, review of a probable cause determination must be "informed by the breadth of the search authorization sought." *Id.* (citing *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011)).

### 2.    Probable Cause Was Demonstrated

The Cell Site Warrant Application contained sufficient information to establish probable cause that Defendant had committed a crime and that historical cell site data from her phone contained evidence of that crime. The Cell Site Warrant Application alleged that Defendant and others had engaged in stealing government funds, in violation of 18 U.S.C. § 666. A person violates Section 666 if, while acting as "an agent of an organization . . . or any agency thereof . . . [he or she] embezzles, steals, obtains by fraud, or otherwise without authority

knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that . . . is (i) valued at $5,000 or more, and (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency . . . ."    18 U.S.C. § 666(a)(1)(A).

As set forth above, based on data obtained from NYC DOHMH, the Cell Site Warrant Application detailed a pattern of conduct relating to Defendant's provision of EIP services that was highly improbable, and on some occasions, seemingly impossible, over the course of three years between January 1, 2016, and December 31, 2018.  The Cell Site Warrant Application alleged, *inter alia*, that Defendant worked 92% of all possible days in that three-year period, resulting in Defendant billing for services approximately 1,007 out of 1,095 total days in 2016, 2017, and 2018, collectively.  (Cell Site Warrant Appl., Dkt. 117-1 at ECF 10.)  The Application further alleges that during this same period, Defendant billed for approximately 592 sessions that ended after 9:00 p.m. and 403 sessions beginning before 7:00 a.m., which was suspicious because all of the sessions were "conducted with children between the ages of birth and three years old . . . [and] most children of such ages are asleep" at those times.  (*Id.* at ECF 5, 10.)  The Application describes other improbabilities, such as Defendant's billing records showing that, on March 22, 2018, she not only worked a 17-hour day, but also traveled between and set up for nine different sessions within 15 minutes or less.  (*Id.*)  Additionally, the NYC DOHMH provided statistics, used in the Cell Site Warrant Application, showing a significant decrease in Defendant's billings after the October 2018 arrests of other EIP therapists for fraudulent billing practices.  (*Id.* at ECF 11.)

The Application not only describes Defendant's suspicious billing practices and patterns, but reports that the NYC DOHMH spoke to parents of children with whom Defendant had worked.

(*Id.* at ECF 10–11.)  Two of the parents denied that Defendant had ever taught late-night sessions with their children; a third, while contested by Defendant,[6] claimed that Defendant asked her "to sign session notes that had not occurred."  (*Id.* at 11; *see* Def. Mot., Dkt. 108 at 7 (acknowledging that having parents sign blank forms "is damning information that is evidence of a crime").)

Additionally, Defendant's reliance, (Def. Reply, Dkt. 114 at 5–6), on *United States v. Lauria*, 70 F.4th 106 (2d Cir. 2023), is misplaced.  The sparse factual information contained in the warrant applications in *Lauria* is readily distinguishable from those at issue in this case.  70 F.4th at 129.  In *Lauria*, the Second Circuit found that the two facts alleged in the search warrant application connecting the defendant to the charged robbery—that is, the defendant being Facebook "friends" with one of the perpetrators and the defendant's cell phone being in communication with that perpetrator's cellphone "shortly before" the robbery—were "insufficient to demonstrate a 'reasonable probability' that the sought months of [cellphone] records" would contain relevant evidence.  *Id.*  Here, as discussed above, the Cell Site Warrant Application contained significantly greater and more specific information showing a pattern of conduct by Defendant that was indicative of fraudulent overbilling for EIP services over a three-year period.[7]

---

[6] The Court does not make a factual finding as to whether or not Defendant asked parent Nadia H. to sign blank forms.  Resolution of this dispute, if any, is reserved for trial.  Where a question raised by the Defendant pre-trial is "intermeshed with questions going to the merits, the issue should be determined at trial."  *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998) (quoting *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987)).  The Court only notes that Defendant has not made a substantial preliminary showing that this allegation is false or misleading or that the magistrate judge who issued the Cell Site Warrant had any reason to doubt the accuracy of that statement in the warrant application.  Thus, it is appropriate for the Court to consider this information in determining whether the Application established probable cause to search.

[7] Although not explicitly stated in Agent Agesta's affidavit, it is certainly reasonable to infer, given the nature of Defendant's work, that she carried her cellphone with her when traveling to her EIP appointments so that she could communicate with the parents of her clients and otherwise.  *See United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2023) ("A showing of nexus

In sum, the Court finds that, under the totality of the circumstances, the allegations in the Cell Site Warrant Application demonstrate probable cause to believe that Defendant had engaged in fraudulent billing in violation of 18 U.S.C. § 666(a)(1)(A) between January 1, 2016, and December 31, 2018, and that there was a "fair probability that contraband or evidence of a crime [would] be found" in a search of Defendant's historical cell site data for that period of time. *Lauria*, 70 F.4th at 128 (quoting *Gates*, 462 U.S. at 238).

**B.  Overbreadth**

1.  <u>Legal Standard</u>

The Fourth Amendment protects against overbroad searches.  U.S. Const., amend. IV. "The doctrine of overbreadth represents, in a sense, an intersection point for probable cause and particularity principles: it recognizes, in pertinent part, that a warrant's unparticularized description of the items subject to seizure may cause it to exceed the scope of otherwise duly established probable cause." *United States v. Wey*, 256 F. Supp. 3d 355, 382 (S.D.N.Y. 2017). "[A] warrant is legally invalid for overbreadth to the extent it permits officers to search or seize items without probable cause that they contain evidence of a crime." *United States v. Kidd*, 386 F. Supp. 3d 364, 374 (S.D.N.Y. 2019).   "[B]readth and particularity are related but distinct concepts." *United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018).  "A warrant may be broad, in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material, without violating the particularity requirement." *Id.*  In determining whether a warrant is overbroad, courts must focus on "whether there exists probable cause to support the breadth of

---

does not require direct evidence and 'may be based on reasonable inference from the facts presented based on common sense and experience.'" (quoting *United States v. Buck*, No. 84-CR-0220 (CSH), 1986 WL 12533, at *4 (S.D.N.Y. Mar. 10, 1987))).

the search that was authorized." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 464 (S.D.N.Y. 2013) (quoting *United States v. Hernandez*, No. 09-CR-0625 (HB), 2010 WL 26544, at *8 (S.D.N.Y. Jan. 6, 2010)).

2.     Application

The Cell Site Warrant sought cell site information for the time period of January 1, 2016, to October 31, 2018, the latter date being the day NYC DOHMH spoke to parent Nadia H. about several EIP therapists who worked with her child and had asked her to sign session notes for appointments that had not happened.  (Investigator Notes, Dkt. 118-1.)  The Cell Site Warrant Application alleged unusual billing practices for the period of January 1, 2016, to December 31, 2018, based on Defendant's suspicious billing for 592 sessions that allegedly ended after 9:00 p.m. and at least 403 sessions beginning before 7:00 a.m. (Cell Site Warrant Appl., Dkt. 117-1 at ECF 10).  The cell site data sought in the Cell Site Warrant was for a shorter period than described in the Application.  (*Compare id.* at ECF 12, *with id.* at ECF 37.)  Because the Cell Site Warrant Application established probable cause that Defendant was involved in the alleged violation of Section 666 for the entire period of time for which cell site data was sought, the Court finds that the breadth of the warrant is sufficiently supported by the analysis of Defendant's billing records. (*Id.* at ECF 9–11.)

Again, the Court finds Defendant's reliance on *Lauria* to be misplaced.  As discussed above, the cell site warrant application in *Lauria* sought a warrant for several months of location data based on evidence of two armed robberies that were committed years apart.  By contrast, here, the evidence establishes probable cause that Defendant was involved in the alleged fraudulent billing for the entire time period of the requested search.  Thus, as the government argues, "it was

[Defendant's] criminal scheme that was expansive, not the information sought by the Cell Site Warrant." (Dkt. 124 at 2.)

Accordingly, the Court does not find that the Cell Site Warrant was temporally overbroad.

### C.    Nexus Requirement

#### 1.    Legal Standard

The Fourth Amendment requires searches to be reasonable, which includes finding "reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Thus, to satisfy this nexus requirement, probable cause must establish that evidence of the crime is located in the property or item to be searched. "A showing of nexus [between the criminal activity and the thing to be searched] does not require direct evidence and 'may be based on reasonable inference from the facts presented based on common sense and experience.'" *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (quoting *Buck*, 1986 WL 12533, at *4). However, "[a]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 445–46 (2d Cir. 2013) (citation omitted).

#### 2.    Application

Defendant argues that the Cell Site Warrant failed to identify a nexus between Defendant's cell phone and the subject offenses because "[t]here was no evidence that a crime occurred at all, let alone, evidence that [Defendant] in some way used her phone to commit a crime." (Def. Mot., Dkt. 108 at 16–17.) This argument is inapposite. Here, the government is not alleging that the cell phone itself was used to commit the crime, but rather that there is probable cause to believe that Defendant's historical cell site data contains evidence of her involvement in criminal activity,

namely, that she was not where she claimed in her allegedly fraudulent EIP bills. (*See* Resp. in Opp., Dkt. 109 at 21 ("[T]he affidavit explained the nexus between the Subject Offenses and the cell site data located in the defendant's Phone – that is, such data would 'enable investigators to obtain information about the location of the [defendant's Phone] during the dates for which the [defendant] billed for EIP therapy sessions and verify whether the [defendant was] present at the locations for which [she] billed EIP therapy sessions.'" (citation omitted)); *see also* Cell Site Warrant Appl., Dkt. 117-1 at ECF 31 (suggesting that "the [historical cell site] information can be used to identify the SUBJECT TELEPHONE['S] user[] and whether [Defendant was] using [her] phone[] when [she was] purportedly providing EIP sessions").) Defendant's argument that the Cell Site Warrant Application lacked the necessary nexus to her alleged crimes is therefore meritless.

## III.    Request to Suppress the Evidence Obtained Pursuant to the First Phone Warrant

The First Phone Warrant authorized a search of Defendant's cell phone for evidence within the time period between January 1, 2015, and June 30, 2019. (Def. Mot., Dkt. 108 at 11.) In contrast to the Cell Site Warrant Application, the First Phone Warrant Application alleged both fraudulent healthcare billing, in violation of 18 U.S.C. § 666, and a scheme to defraud a health care benefit program, in violation of 18 U.S.C. § 1347. (First Phone Warrant Appl., Dkt. 117-2 at ECF 20.) Notably, unlike Section 666, Section 1347 does not have a threshold dollar amount. *Compare* 18 U.S.C. § 1347 (providing no minimum dollar value), *with* 18 U.S.C. § 666 (applying to property that "is valued at $5,000 or more"). The health care fraud statute, 18 U.S.C. § 1347, establishes liability for "[w]hoever knowingly and willfully executes, or attempts to execute, a scheme or artifice [] (1) to defraud any healthcare benefit program; or (2) to obtain, by means of

false or fraudulent pretenses, representations, or promises, any of the money or property owned

by, or under the custody or control of, any healthcare benefit program . . . ." 18 U.S.C. § 1347.

### A.    Probable Cause

1.    <u>Legal Standard</u>

For the standard for probable cause, *see supra* Discussion Section II.A.1.

2.    <u>Application</u>

Defendant argues that the First Phone Warrant "did not in any way attempt to tie Ms.

Falcon's use of the cellphone to warrant this . . . search," (Def. Mot., Dkt. 108 at 11), and that, to

establish probable cause to search Defendant's cellphone, "the government . . . relies on prior

investigations and arrests into individuals entirely unrelated to the nine other people listed on the

affidavit," (Def. Reply, Dkt. 114 at 6). The Court disagrees.

As discussed above, Agent Agesta's affidavit in support of the First Phone Warrant

Application set forth the same factual allegations as the Cell Site Warrant Application—which the

Court has found sufficient to establish probable cause to believe that Defendant had engaged in

fraudulent EIP billing between January 2016 and December 2018—and additionally alleged facts

obtained through the government's analysis of the Cell Site Warrant results and other records:

> [B]etween approximately January 2016 and December 2018, [Defendant]
> submitted fraudulent session notes and invoices and received payment for at least
> 6,384 non-existent EIP sessions, resulting in the improper disbursement of more
> than $636,345, including more than $291,225 in Medicaid funds and more than
> $176,011 in NYC DOHMH funds. . . . Law enforcement officers compared the
> historical location data associated with [Defendant]'s telephone to location
> information contained in the EIP session notes submitted by [Defendant]. Based on
> this review, agents determined that on more than 6,100 occasions, [Defendant] was
> not present in the vicinity of the EIP therapy session location at the time that the
> session purportedly occurred. Law enforcement officers reviewed telephone toll
> records for [Defendant]'s cellular telephone, . . . and determined that on at least 473
> occasions [Defendant] was using her cellular telephone during at least a quarter of
> the time period that she claimed to be performing a one-hour EIP therapy session.

(First Phone Warrant Appl., Dkt. 117-2 at ECF 34, 36–37.)

These additional factual allegations—with reference to specific numbers of fraudulent sessions, occasions during which Defendant was not present in the vicinity of the EIP therapy location, and occasions Defendant was using her cell phone for at least a quarter of the time she claimed to be in a session—amply demonstrated probable cause to search Defendant's cellphone for evidence that Defendant was violating 18 U.S.C. § 666 and 18 U.S.C. § 1347.

**B.    Overbreadth**

Defendant also challenges the First Phone Warrant as being overly broad in its temporal scope and lacking particularity.  (Def. Mot., Dkt. 108 at 17.)  The Court again disagrees.

1.    Legal Standard

For the standard for the overbreadth doctrine, *see supra* Discussion Section II.B.1.

2.    Application

Although the First Phone Warrant specified a longer time period than the Cell Site Warrant—seeking information for the period between January 2015 and June 2019 compared to January 2016 to December 2018—this temporal expansion was justified by the additional facts alleged in the First Phone Warrant, which tends to show the regularity and pervasiveness of Defendant's involvement in fraudulent billing activity prior to her October 2021 arrest.  (*See* First Phone Warrant Appl., Dkt. 117-2 at ECF 34, 36–37.)  Indeed, it was the analysis of the cell site data that the government obtained *from* the Cell Site Warrant that justified the longer time frame specified in the First Phone Warrant than that of the Cell Site Warrant.  Thus, given the additional allegations of copious (over 6,000) allegedly fraudulently billed EIP sessions, and the fact that "doubts should be resolved in favor of upholding the warrant," *United States v. Travisano*, 724

F.2d 341, 345 (2d Cir. 1983), the Court finds that the time frame specified in the First Phone Warrant is not overly broad.

Next, in arguing that the First Phone Warrant was overbroad, Defendant points to the portion of the Application describing the nature of the search, which specifically states: "The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT DEVICES to *human inspection* in order to determine whether it is evidence described by the warrant." (First Phone Warrant Appl., Dkt. 117-2 at ECF 15 (emphasis added); *see also* Def. Reply, Dkt. 114 at 7.) Further, Defendant describes the categories sought in the warrant as having "functionally no limit." (Def. Reply, Dkt. 114 at 7.)

Although a warrant that "allow[s] a search of all computer records without description or limitation . . . would not meet the Fourth Amendment's particularity requirement," *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) (quoting *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009)), the warrant at issue here does not do so. The First Phone Warrant only authorizes the government to search for evidence related to specific statutory violations and non-exhaustively identifies the categories of data that the government might search for: call logs, contact lists, text messages, emails, instant messages, photographs, videos, internet activity, and geo-location data. (First Phone Warrant Appl., Dkt. 117-2 at ECF 19.) This standard formulation of a search warrant is regularly approved in this Circuit. *See, e.g.*, *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990) (upholding warrant that authorized search for "illustrative list of seizable items" and "records and other items that constitute[d] evidence of the [specified] offenses"); *United States v. Romain*, 678 F. App'x 23, 26 (2d Cir. 2017) (summary order) (upholding warrant that "permitted seizure of" an enumerated list of file types from a cell phone including, *inter alia*, call logs, address

information, messages, emails, photographs, and "the content of apps"); *United States v. Young*, 745 F.2d 733, 759–60 (2d Cir. 1984) (finding warrant allowing the seizure of listed items plus "other evidence" of the specified crimes was sufficiently particular); *see also Galpin*, 720 F.3d at 445–46 (explaining that for a warrant to satisfy the particularity requirement, it "must identify the specific offense for which police have probable cause," "describe the place to be searched," and "specify the items to be seized by their relation to designated crimes" (cleaned up)).[8]  Thus, the Court finds that the scope of the First Phone Warrant is sufficiently circumscribed to satisfy the particularity requirement and is not overly broad.

In sum, the Court finds that the probable cause alleged in the First Phone Warrant is sufficient to support the breadth of the search authorized by the warrant.  *Galpin*, 720 F.3d at 445–46.

### C.     Nexus

#### 1.     Legal Standard

For the standard for the nexus requirement, *see supra* Discussion Section II.C.1.

#### 2.     Application

Defendant also argues that the First Phone Warrant "impermissibly failed to establish the requisite nexus between the phone and the categories of materials to be searched," (Def. Reply, Dkt. 114 at 9), and that "there was no attempt to tie this application with any particularity, specifically to Ms. Falcon or her cellphone," (Def. Mot., Dkt. 108 at 18).

---

[8] Although courts outside of this Circuit have focused on the sufficiency of the government's "search protocol," *see, e.g.*, *Matter of the Search of Apple iPhone, IMEI 013888003738427*, 31 F. Supp. 3d 159, 166 (D.D.C. 2014) ("[A] sufficient search protocol, i.e. an explanation of the scientific methodology the government will use to separate what is permitted to be seized from what is not, will explain to the Court how the government will decide where it is going to search—and it is thus squarely aimed at satisfying the particularity requirement of the Fourth Amendment."), that is not the approach taken in this Circuit.

To satisfy the nexus requirement, the application must show that *evidence* of the crime is located in the property or item to be searched. Contrary to Defendant's argument, the Second Circuit has not established a requirement that the phone be used to *facilitate* the crime. *See supra* Discussion Section II.C.1. Instead, here, the Court finds that the nexus requirement is met because the First Phone Warrant Application establishes probable cause to believe that evidence of the charged offenses would be located on Defendant's phone, even if that evidence in itself is not inculpatory, e.g., Defendant's use of her cellphone at a particular time. In the First Phone Warrant Application, the government alleged that "on at least 473 occasions, [Defendant] was using her cellular telephone during at least a quarter of the time period that she claimed to be performing a one-hour EIP therapy session." (First Phone Warrant Appl., Dkt. 117-2 at ECF 36–37.) The search of Defendant's phone would not only be able to verify the geolocation data obtained from Defendant's provider as a result of the Cell Site Warrant, but also show what program or service Defendant was specifically accessing during billed EIP appointments, when she was not permitted to access her phone according to EIP policy. Therefore, the Court finds that the First Phone Warrant Application establishes a nexus between Defendant's cellphone and the categories of materials to be searched pursuant to the warrant.

\*       \*       \*

Thus, Defendant's request to suppress evidence obtained pursuant to the First Phone Warrant is denied.

## CONCLUSION

For the reasons explained above, Defendant's motion to suppress the data obtained from the Cell Site Warrant and First Phone Warrant is denied on the merits, and Defendant's motion to suppress the data obtained from the Second Phone Warrant and for a Bill of Particulars is denied as moot.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: January 8, 2025
     Brooklyn, New York